CLEMENS OSKAMP V. WILLIAM H. CRITES ET AL.

FILED OCTOBER 4, 1893.   No. 4974.

Replevin: BUILDINGS AS CHATTELS: CONTRACT OF SALE: NOTES GIVEN BY PURCHASER: DEFAULT: INSTRUCTIONS.   A, by contract in writing, agreed to sell to B an elevator and other build-

ings situated upon land leased to A for a term of years.  B was put into possession, the buildings remaining in their original position.  The contract provided for payment of the purchase money by B to A in certain installments; that time should be the essence of the contract, and in case default should be made, the contract should become void, and B be deemed a mere tenant at will, and payments made become forfeited as stipulated damages; that upon the strict performance of the contract A would make a good and sufficient bill of sale of the premises to B. Notes were given by B to A for the deferred payments.  B made default in his payments, and A did not return or tender back the unpaid notes to B, either before suit or before or at the trial. *Held*, (1) That replevin would not lie to recover possession of the property without a return or tender of the unpaid notes; (2) that irrespective of the question of a return or tender of such notes the vendor could not proceed in replevin.

ERROR from the district court of Merrick county.  Tried below before POST, J.

The opinion contains a statement of the case.

*C. A. Baldwin* and *John Patterson*, for plaintiff in error, to support the contention that to maintain replevin it was unnecessary to return or tender back the unpaid notes given by the purchaser, because the sale was conditional and the property belonged to the plaintiff when the defendants failed to perform the contract, cited: *Marston v. Baldwin,* 17 Mass., 605 ; *Harkness v. Russell,* 118 U. S., 663 ; *Albright v. Brown,* 23 Neb., 136 ; Benjamin, Sales [4th. ed.], sec. 320, and note; *Marquette Manufacturing Co. v. Jeffrey,* 13 N. W. Rep. [Mich.], 592 ; *Dunlap v. Gleason,* 16 Mich., 158 ; *Preston v. Whitney,* 23 Id., 260 ; *Germain v. Wind,* 13 Pac. Rep. [Wash.], 753 ; *Dodd v. Bowles,* 19 Id., 156 ; *New Home Sewing Machine Co. v. Bothane,* 38 N. W. Rep. [Mich.], 326 ; *Shoshonetz v. Campbell,* 24 Pac. Rep. [Utah], 672 ; *Tufts v. D'Arcambal,* 48 N. W. Rep. [Mich.], 497; Jones, Mortgages, secs. 256–270.

*J. W. Sparks* and *J. C. Martin, contra.*

IRVINE, C.

The plaintiff in error sued the defendants in error in re-plevin to recover the possession of a grain elevator, a two-story warehouse, an engine and boiler house, an engine, boiler, belting, machinery, and office building situated upon the right of way of the Union Pacific Railway Company at Clark's station.

Haddox filed a general denial. The two other defend-ants acquiesced in plaintiff's demand for the property and do not figure in the controversy. The proof shows that the plaintiff and one Hains at one time owned the property in question, and that it was situated upon land which is a part of the right of way of the Union Pacific Railway Com-pany, and which had been leased to Oskamp and Hains. Two of the houses were erected upon permanent stone foun-dations. Oskamp and Hains entered into a written con-tract with Haddox for the sale of this property to the latter. This contract is framed in language commonly used in cer-tain forms of contracts for the sale of land. By it the parties of the first part (Oskamp and Hains) "agreed to sell to the party of the second part" the property described in the petition, and Haddox "agreed to buy" and to pay for the property $6,000, $1,000 in hand, and $100 every thirty days for one year from the date of the contract, and $200 every thirty days thereafter; *provided*, that if $4,000 or more should be paid in the first year, then the vendors should allow Haddox a rebate of $500. Haddox also agreed to pay all taxes and to insure the buildings for the benefit of the vendors in the sum of $3,350. The contract then proceeds as follows: "Forthwith, after the payment of such purchase money, taxes and interest as aforesaid, time being the essence of this contract, the parties of the first part agree to execute or cause to be executed to the party of the second part a good and sufficient bill of sale for the said described premises."

It was then provided that in case default should be made in the performance of any of the conditions by the vendee to be performed, the contract should become void, and the party of the second part be deemed a mere tenant at will, and be liable to be proceeded against in a forcible entry and detainer case, and that all payments that might have been made should, in that case, become forfeited as stipulated damages.

It appeared that Haddox was put into possession under this contract; that in addition to the $1,000, a payment of $500 had been made; that Haddox had failed to insure the property; had defaulted in his payments, and that Hains' interest had been transferred to Oskamp. It also appeared that notes had been given by Haddox for the deferred payments; that these notes were, at the time of demand and institution of the suit, in the possession of the Omaha National Bank for collection. They were not tendered back to Haddox when the action was brought nor even at the trial. The property was delivered to the plaintiff, but the buildings were not moved from their original location.

These facts were all undisputed. The trial judge instructed the jury to find for the defendant upon the ground that plaintiff could not rescind the contract without tendering back the notes. There was a verdict accordingly, fixing the value of the property at $5,500.

All the assignments of error relate directly or indirectly to the propriety of the instruction given. The plaintiff contends that the contract with Haddox amounted only to a proposition to sell, or, at most, to a conditional sale; that no title had passed, and that under the strict terms of the contract, upon default the plaintiff became entitled to the immediate possession of the property without tendering back the notes.

It is very doubtful whether the plaintiff was entit'ed to maintain replevin even under his construction of the contract. It may be admitted that the buildings in question

were chattels, and the doubt remains just as serious. A lease for years is also a chattel, but if a tenant for years sublets and the sub-tenant holds over after his term, the remedy is clearly by forcible entry and detainer and not replevin. It is the nature of the thing itself, and not that of the plaintiff's property in the thing, which determines whether forcible entry and detainer or replevin will lie.

It is true, as pointed out by the plaintiff, that this court has held, under certain peculiar circumstances, that buildings may be chattels personal and subject to replevin; but to allow replevin to be maintained under such circumstances as these makes the writ in effect a writ of restitution for land, an office which it cannot be permitted to fulfill. Replevin is, in any case, a harsh remedy, permitting the plaintiff to take property upon his bare allegation of ownership, and before any opportunity to try the issue. The court should be very jealous of extending the action beyond the cases to which it was designed to apply.

We do not think the contract should be construed as plaintiff contends. Title was not expressly reserved in the vendor until the fulfillment of the conditions. The vendee was placed in full possession, clothed with all the indicia of ownership, and we are thoroughly satisfied that the intention of the parties was to constitute the transaction an actual sale, subject, however, to be defeated at the option of the vendors by failure upon the part of the vendee to perform certain conditions subsequent. We are quite positive that viewed in this light the vendee could not have been ousted in an action of forcible entry and detainer, for the reason that in such an action the equities between the parties could not be adjusted. Had the action taken this form it would be directly within the rule in *Chicago, B. & Q. R. Co. v. Skupa*, 16 Neb., 341. The same objections apply with even greater force to the action of replevin.

Finally, the verdict was right for the reason given by the trial judge in his instruction. It would be intolerable

to permit the vendor to insist upon the forfeiture in such a case and at the same time retain the evidences of indebtedness upon the failure to pay which the forfeiture is claimed. It is not a question of the vendee's right to have payments already made refunded, but the vendor could not rescind the contract or declare it forfeited, retake the property and at the same time hold the notes for the remaining payments and retain them in the hands of his agent for collection. We are cited to certain cases which it is claimed establish a contrary doctrine. In all of them distinctions exist which we think deprive them of applicability; but even were they in point we would not follow them because of the manifest injustice of the result. Even as against a fraudulent vendee the vendor must return or tender back a note given for the purchase money. (*Doane v. Lockwood*, 115 Ill., 490.)

In any view of the case the defendants were entitled to a verdict and the judgment is

AFFIRMED.

THE other commissioners concur.